IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LISA M.F.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 1:22-cv-01419-MMM-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Brief (Doc. 12), the Defendant's Brief (Doc. 15), and the Plaintiff's Reply Brief (Doc. 17). This matter has been referred for a report and recommendation. For the reasons stated herein, the Court recommends the Plaintiff's request to reverse and remand the unfavorable decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, be denied.[1]

**I**

Lisa M.F. filed an application for supplemental security income (SSI) on February 14, 2020, alleging disability beginning on January 1, 1993. Her SSI claim was denied initially on March 18, 2021 and upon reconsideration on August 9, 2021. Lisa filed a request for hearing concerning her application which was held on January 25, 2022 before the Honorable David W. Thompson (ALJ). At the hearing, Lisa was represented by an attorney, and Lisa and a vocational expert testified. Following the hearing, Lisa's claim was denied on February 7, 2022. Her

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 6) on the docket.

1

request for review by the Appeals Council was denied on September 29, 2022, making the ALJ's Decision the final decision of the Commissioner. Lisa timely filed the instant civil action seeking review of the ALJ's Decision on December 2, 2022.

## II

Lisa argues the ALJ committed reversible error by failing to address the consistency and supportability of the psychological experts' medical opinions.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some

other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Lisa claims error on the ALJ's part at Steps Two, Three, Four, and Five by reason of his failure to address the consistency and supportability of the psychological experts' medical opinions.

### A

At Step one, the ALJ determined Lisa had not engaged in substantial gainful activity since February 14, 2020, the application date. AR 15. At Step Two, the ALJ determined Lisa had the following severe impairments: osteoarthritis of the bilateral knees; sleep related breathing disorders; cardiomyopathy; and obesity. *Id*. At Step Three, the ALJ determined Lisa did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 18. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except as otherwise stated in this paragraph. Claimant is limited to occasional climbing of ramps, stairs and ladders. Claimant is limited to no climbing of ropes or scaffolds. Claimant is limited to occasional kneeling, crouching, and crawling. Claimant needs to avoid concentrated exposure to unprotected heights and unprotected moving machinery. Claimant is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multistep, self-evident tasks, easily resumed after momentary distraction. Claimant is limited to jobs that do not require more than occasional work related interaction with the public, coworkers and supervisors.

AR 18-19. The ALJ found Lisa had no past relevant work. AR 23. Finally, at Step Five, the ALJ determined that considering Lisa's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national

economy that Lisa could perform. *Id*. Thus, the ALJ concluded Lisa had not been under a disability since February 14, 2020. AR 25.

**B**

Lisa argues remand is required so that an ALJ can reconsider the medical opinions and, at a minimum, articulate his consideration of the supportability and consistency of those opinions. She says his articulation fell short where he did not offer any evaluation of the consulting psychologists' opinions, only made allusions to those opinions which consisted of perfunctory statements, made no sense in discounting their opinions, and played doctor. In her opening Brief, Lisa anticipated the Acting Commissioner was likely to defend the Agency's Decision on grounds which the ALJ did not himself offer. The Acting Commissioner argues the ALJ's evaluation of the three psychological experts' medical opinions was supported by substantial evidence, focusing mainly upon the ALJ's discussion of pertinent record evidence and conclusions made therefrom at Step Two.

**1**

In his consideration of whether Lisa had any severe mental impairments at Step Two, the ALJ observed that Lisa's records referenced depressive/bipolar related disorders and anxiety/obsessive-compulsive disorder. He stated up front that he "concluded that there is insufficient evidence to support findings of any severe mental impairment." AR 15. As he was required to under the relevant Listings, the ALJ made that finding upon consideration of the four broad functional areas of mental functioning set out in the Listings, the "paragraph B" criteria. He cited and discussed consultative psychological examiner Sanka Samardzija, PsyD's September 15, 2020 telemedicine examination, State Agency non-examining consultant Gayle Williamson, PsyD's October 14, 2020 form statement, and State Agency non-examining consultant Joseph Mehr's July 30,

2021 form statement upon reconsideration (which endorsed Dr. Williamson's opinions).

Dr. Samardzija described Lisa as appropriately dressed and groomed, had good hygiene, and had an appropriate appearance overall. AR 1891. Dr. Samardzija considered Lisa an adequate informant with an adequate ability to relate. *Id.* Lisa's psychiatric history as reported to Dr. Samardzija included that she had major depressive disorder and social anxiety and paranoia. AR 1891-92. She reported she was raped three times by groups of guys on separate occasions, that she re-experienced events, that she had many triggers, and that she was not presently in therapy. AR 1892. As for her social history as reported to Dr. Samardzija, Lisa said she lived with her boyfriend, was able to shop, cook, and clean, and was able to maintain her own hygiene without assistance on a daily basis. *Id.* On examination, Lisa was among other things: was cooperative, exhibited a euthymic mood, respectful, appropriate in behavior; was oriented to time, place and person; did not evidence current or overt suicidal or homicidal signs or symptoms; and had normal speech rate and volume. AR 1893. As for memory, she could repeat five digits forward but not six and four digit backwards but not five. *Id.* Overall, her memory was good. She correctly responded to simple calculations but could not to more complicated ones. *Id.*

In the "Assessment" portion of the examination report, Dr. Samardzija wrote, "[Lisa] suffers all the effects of posttraumatic stress disorder (PTSD). She seems like a very strong person, however, and works through things, but she did say she locks up her house like Fort Knox and she has severe social anxiety." AR 1894. Dr. Samardzija assessed Lisa with, based upon the mental status examination, some impairment in calculations, one impairment in general knowledge (incorrect order of past presidents), no impairment in the ability to compare and contrast objects, no impairment in judgment, adequate orientation,

and good memory. In the "Clinical Impression of the Effect of Impairment on Work-Related Activity" portion, Dr. Samardzija opined as follows: Lisa's ability to relate to others was "[p]oor;" Lisa's ability to understand, remember, and follow simple directions was "[f]air;" Lisa's ability to maintain the attention required to perform simple, repetitive tasks and sustained concentration, persistence, and pace was "[i]mpaired;" and Lisa's ability and adaptive capacity to withstand the stress and pressures associated with a day-to-day work activity were "[p]oor." AR 1895.

State Agency non-examining consultants Dr. Williamson and Mehr opined as follows as to the "paragraph B" criteria: Lisa had mild limitation in understanding, remembering, or applying information; she had moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself. AR 85, AR 101. The State Agency consultants' narratives provided that Lisa had a history of treatment for depression and anxiety, her September 15, 2020 consultative psychological examination was within normal limits, and Lisa reported social anxiety and an avoidance of large groups of people, "although she 'gets along with just about everyone.'" AR 85, AR 102. They assessed her as: moderately limited in the ability to carry out detailed instructions; moderately limited in the ability to maintain attention and concentration for extended periods; moderately limited in the ability to work in coordination with or proximity to others without being distracted by them; moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and moderately limited in the ability to interact appropriately with the general public. AR 91-92, AR 105. They explained Lisa's medical records indicated sufficient cognitive, memory, and

thought process skills to retain the ability to understand, remember, and carry out one/two-step repetitive tasks and to complete a normal workday without interruptions from psychologically based symptoms, and she was limited to reduced contact with the public and situations where there is a large group of people secondary to social anxiety. AR 93, AR 105.

2

Per 20 C.F.R. § 416.920c(a), an ALJ is required to consider the persuasiveness of medical opinions using several factors. Per 20 C.F.R. § 416.920c(b)(2), however, an ALJ is only required to explain how he considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in the decision. *See* 20 C.F.R. § 416.920c(b)(2) (providing the factors of supportability and consistency "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . to be"). 20 C.F.R. § 416.920c(c)(1) provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(2) provides the factor of consistency will be considered when considering medical opinions such that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Stated succinctly, "the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record." *Gary R. v. Kijakazi*, No. 20 C 6109, 2022 WL 4607581, at *11 (N.D. Ill. Sept. 30, 2022) (quoting *Rosado v. Comm'r of Soc. Sec.*, No. 20 C 2003, 2022 WL 1421371, at *3 (M.D. Fla. May 5, 2022)). Here, given the

standard of review the Court is obligated to apply in this case, the Court simply does not find that the ALJ's Decision is so utterly lacking as Lisa so firmly argues.

In order to answer the question of whether substantial evidence supports the ALJ's Decision, the Court must consider whether the ALJ provided an adequate logical bridge from the evidence to his conclusions. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Initially, the Court notes that the ALJ indeed failed to explicitly use the word "consistent" in his Decision. That is regrettable given the articulation standard set forth in 20 C.F.R. § 416.920c(b)(2). It is regrettable but not fatal where the Court must read the Decision as a whole and with common sense. *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (unpublished opinion) (citing *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004)).

Beginning with the ALJ's finding that Lisa's mental impairments caused no significant limitations in the first functional area, the ALJ reasoned:

> The opinions from Dr. Samardzija, Dr. Williamson and psychologist Mehr were not particularly persuasive regarding claimant's mental functioning in the first "paragraph B" domain. Nothing in contemporaneous treatment documentation demonstrates significant mental limitations in understanding, remembering or applying information. Nothing in Dr. Samardzija's clinical findings or elsewhere supports findings of significant mental limitations since the application date in understanding, remembering or applying information.

AR 16. Immediately preceding his conclusion, the ALJ noted that Lisa reported on a Function Report filed with the Agency in July 2021 that she followed spoken and written instructions "fine." *Id.* Next, the ALJ highlighted from Lisa's consultative examination with Dr. Samardzija that the latter opined that the effects of Lisa's mental conditions on her abilities to understand, remember and follow simple directions were "fair." The ALJ highlighted from Dr. Williamson and Mehr's forms that they opined to mild restrictions in this area and moderate

limitation in carrying out detailed instructions. As for "contemporaneous treatment documentation," Lisa does not point to any such documentation which contradicts the ALJ's statement. The Court can trace from the cited evidence to the ALJ's conclusions that the ALJ considered both consistency – what contemporaneous treatment documentation did not show – and supportability – neither Dr. Samardzija's nor records from elsewhere supported significant mental limitations. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). Moreover, the ALJ's finding that Lisa lacked *significant* mental limitations logically followed from Lisa's own statement that she followed instructions "fine," from Dr. Samardzija's opinion of "fair" ability and "good" memory, and the State Agency consultants' opinions of, at worst, "moderate" limitation in the isolated area of mental ability to carry out detailed instructions. Lisa highlights her testimony that she "sometimes" had difficulty with understanding, remembering, or following instructions. The Court is unable to reweigh the evidence to find Lisa's "sometimes" difficulty, along with the evidence the ALJ expressly considered, renders the State Agency consultants' opinions more persuasive than the ALJ found. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the Commissioner).

As for the ALJ's finding that Lisa had mild limitation in the second functional area, the ALJ reasoned:

> [T]hese consulting professionals [Dr. Samardzija, Dr. Williamson, and Mehr] overstated somewhat the effects of claimant's mental

10

>impairments on her functioning. The entirety of the record, including claimant's presentation throughout the hearing, demonstrates that since the application date, claimant's restrictions in the second "paragraph B" domain are mild.

AR 17. The ALJ detailed that Lisa testified to not seeing a psychiatrist or psychologist in many years and her primary care providers instead told her she should talk to her preacher, Lisa said she tried not to go places with a lot of other people or to stay in the back of a room so she could leave, and in a July 2021 Function Report Lisa indicated she lived with friends and reported she had no problems getting along with friends family, neighbors, authority figures, or others. From Dr. Samardzija's consultative examination, the ALJ noted that Lisa told Dr. Samardzija that she was living with her boyfriend and that she sometimes helped her sister care for her uncle, and Lisa was cooperative and respectful throughout the evaluation. The ALJ reasonably concluded that Dr. Samardzija and the State Agency specialists "overstated" the effects of Lisa's mental impairments on her functioning causing "poor" ability to relate to others and a "moderate" limitation in her ability to interact with others where, by her very own representations, Lisa regularly interacted (and even lived) with others and where she acted appropriated at the consultative examination. His conclusion was bolstered by his explicit reliance upon his own observations of Lisa at the hearing. *See Kaplarevic v. Saul*, 3 F.4th 940, 942-43 (7th Cir. 2021) ("It is a routine, common-sense practice for an ALJ to observe claimants. We see no reason to criticize the ALJ for his partial reliance on his own observations in his determination of disability"). Of note, the ALJ did *not* find no limitation whatsoever in this functional area; insofar as the ALJ mentioned the fact that Lisa complained of social anxiety and self-imposed limitations on going places and assigned mild limitation in interacting with others,

that suggests the ALJ used the correct frame of reference (supportability and consistency) when considering the medical opinions.

With regard to the ALJ's finding that Lisa had mild limitation in the third functional area, the ALJ reasoned: "Nothing in claimant's treatment document or Dr. Samardzija's report supports findings of greater than mild mental limitations since the application date in concentrating, persisting or maintaining pace." AR 17. That conclusion followed citations to Lisa's July 2021 Function Report that she could pay attention and that her then-current hobbies and interests included reading books, crocheting, and sewing. *Id*. The ALJ cited the consultative examination during which Lisa did not evidence suicidal or homicidal symptoms and did not evidence delusions, paranoid ideation, or hallucinations. The foregoing pieces of evidence illustrate the ALJ's contemplation of the consistency and supportability factors. To the extent the ALJ mentioned that Dr. Samardzija opined Lisa was impaired, as the ALJ put it, "to an unspecified degree," that offered only an additional, necessary glimpse into his reasoning. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) (stating "the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits"). Dr. Samardzija had firsthand examination findings and Lisa's performance results at hand, and yet failed to specify the extent to which Lisa was impaired in this functional area. Thus, the ALJ reasonably found Dr. Samardzija's opinion in this regard unpersuasive.

The ALJ's stated reason to specifically reject the State Agency consultants' opinions as lacking support is likewise sufficient. After noting that Dr. Williamson and Mehr opined that Lisa's mental impairments caused moderate limitations in the third functional area, the ALJ stated, "However, neither Dr. Williamson nor psychologist Mehr had the benefit of examining claimant." AR 17. Lisa argues the ALJ's discounting of the consultants' opinions does not make sense in the

context in which he did so as the presence of an examining relationship could make the examiner's opinion more persuasive. *See* 20 C.F.R. § 416.920c(c)(3)(v) ("A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder"). She says the ALJ used the examining relationship "as a tool to excise the parts of a non-examining consultant's opinion that he didn't like, even while continuing to reject the opinion that actually benefited from an examination." Plf's Brief (Doc. 12 at pg. 14 n.4). The ALJ made plain up until that point in his Decision that his analysis of Dr. Samardzija's consultative examination was that her own examination results did not support her opinions, nor was other record evidence (i.e. Lisa's own statements) consistent with her opinions. As explained above, the ALJ's analysis of Dr. Samardzija's opinions pursuant to 20 C.F.R. § 416.920c was sufficient. It nevertheless made sense for the ALJ to find unpersuasive the State Agency consultants' opinions as to the third functional area because they did not have the benefit of examining Lisa. The fact remained that per 20 C.F.R. § 416.920c(c)(3)(v), the presence or absence of an examining relationship was a factor the ALJ was to consider in weighing an individual medical opinion. Moreover, the ALJ had just finished saying that Dr. Samardzija, who had actually examined Lisa, had still only opined "to an unspecified degree." AR 17. It bears mentioning here, given Lisa's contention that if the ALJ thought the doctor's language too vague he should have sought clarification, that 20 C.F.R. § 416.920b(b) states, "We consider evidence to be insufficient when it does not contain all the information we need to make our determination or decision." The ALJ's phrasing indicates he took issue with the lack of specificity in Dr. Samardzija's opinion particularly where she actually engaged with and examined Lisa, not because she inadvertently left out necessary information or otherwise failed to more thoroughly examine Lisa.

13

As for the ALJ's finding that Lisa had mild limitation in the fourth and final functional area, the ALJ reasoned:

> Dr. Samardzija's impression included that claimant's mental abilities and adaptive capacities to withstand the stress and pressures associated with a [sic] day-to-day work activities were poor . . . Non-examining specialists Dr. Williamson and psychologist Mehr more persuasively opined in their October 13, 2020 and July 30, 2021 form statements that claimant's mental impairments caused mild limitations in the third [sic] "paragraph B" domain.

AR 18. Here, the Court agrees with Lisa that the ALJ did not sufficiently explain how he reached the conclusion that the State Agency consultants "more persuasively opined" that Lisa had only mild limitation. All the ALJ cited to were Lisa's statements (at the hearing, in her Function Report, and to Dr. Samardzija) that she drove a few miles every week, was able to manage her personal care needs, and was able to shop, cook, and clean. The ALJ additionally included that Lisa was appropriately dressed and groomed, with good hygiene. The ALJ did not explain how Lisa's retained ability to perform certain daily activities and her appearance at the consultative examination were more aligned with the State Agency consultants' opinion of mild limitation. After all, "an ALJ may not equate activities of daily living with those of a full-time job." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020). The ALJ's shortcoming in the fourth functional area was harmless error. *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) (explaining that an error is harmless where it can be "predict[ed] with great confidence" that the ALJ would reach the same result on remand). By Lisa's own reasoning, Dr. Samardzija's opinion was that Lisa had a marked limitation in the fourth functional area. Because the ALJ did not err in his analysis of the first three functional areas, even assuming a proper analysis would lead to him finding Dr. Samardzija's opinion the more persuasive one *and* that a "poor" rating equated to

14

a marked limitation, that would mean Lisa had just one marked limitation. To meet Listing 12.15, for example,[2] a claimant must have extreme limitation of one, or *marked limitation of two* of the four areas of mental functioning. 20 C.F.R. Part 404, Subpt. P, App'x 1, § 12.15(A)-(B).

The ALJ's discrete analyses of Dr. Samardzija's, Dr. Williamson's, and Mehr's opinions for the purposes of deciding the extent of Lisa's limitation in three of the four broad functional areas of mental functioning conformed to 20 C.F.R. § 416.920c(b). Lisa argues that had the ALJ addressed consistency, he would have had to note that the three consultants agreed with each other[3], overlapped in ways with the consultative examiner's opinion, and were consistent with Lisa's own testimony. The ALJ was tasked with considering each opinion unto itself (supportability) as well as considering each opinion against other opinions and evidence of record (consistency). The ALJ's express findings as to each of those three opinions in the former regard precludes Lisa's foregone conclusion. The Court notes that the State Agency consultants noted in their forms that Dr. Samardzija's "PCE [psychological consultative examination] MSS [Medical Source Statement] opinion is disregarded as not accurate to the exam results." AR 85, AR 102. Also, Lisa's reliance, in part, upon her testimony only goes so far to convince the Court of any error on the ALJ's part. The ALJ considered Lisa's testimony and statements in several instances, both those that supported and those that detracted from her claim of disability. The Court would have to reweigh that evidence to

---

[2] Lisa argues that Dr. Samardzija's opinion and her additional findings would indicate that Lisa meets Listing 12.15. *See* Plf's Brief (Doc. 12 at pg. 10).

[3] In a footnote in her opening Brief, Lisa says Dr. Samardzija's examination findings seem consistent with the findings of Dr. Kristen Wright from a January 29, 2018 consultative examination "presumably associated with a prior claim for benefits." Plf's Brief (Doc. 12 at pg. 9 n.2). Lisa does not actually make the argument that the ALJ erred in failing to mention that 2018 consultative examination. Given that, coupled with the lapse in time between that examination and Lisa filing the instant application for SSI, the Court will entertain Lisa's point no further.

15

find remand warranted. *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016) ("we may not decide facts anew or make independent credibility determinations, and must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding").

The ALJ's discussion of the record evidence later in his Decision, at Step Four, further convinces the Court that the ALJ's evaluation of the three relevant medical opinions was supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Lisa admits her mental health treatment record is a "small" one "in such a large file dominated by treatment for physical impairments." Plf's Brief (Doc. 12 at pg. 16). Lisa argues that the ALJ wanted to ignore the severity of her mental impairments because of the lack of ongoing, consistent treatment for those impairments. Significantly, the ALJ addressed the extent of that small mental health treatment record at Step Four rather than ignore it. He was well within the bounds of his duty to consider the entirety of the record and to base his persuasiveness findings, in part, on the fact of a slim mental health treatment record and what that record did and did not provide. He was not required to mention every piece of evidence, and individual records provided a mixed bag. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence"). For instance, Lisa cites a record the ALJ mentioned without including that it noted Lisa's statement that her depression was uncontrolled. *See Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (stating that an ALJ is not required to address in writing every piece of evidence or testimony presented but is required to provide an accurate and logical bridge between the evidence and his conclusions). That same record included Lisa's statements that

her concentration had been fine and she was meeting up with a support group which had been helping her. AR 2146. There is nothing to suggest the ALJ obscured what was said in those treatment records such that he ignored an entire line of contrary evidence. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (reiterating that an ALJ "may not ignore an entire line of evidence that is contrary to the ruling").

There is also nothing to suggest that the ALJ was callous towards Lisa's history of being raped and beaten three times in the past. With all due respect to Lisa and what she has been through, the Decision instead reflects that the ALJ acknowledged Lisa's history, but also remained cognizant of his role – to consider objective and subjective evidence of record in the manner detailed in the regulations and to do so in a way that built an accurate and logical bridge between evidence and stated conclusions. Lisa cites *Mandrell v. Kijakazi*, 25 F.4th 514 (7th Cir. 2022), in support of her contention that the ALJ here played doctor. In *Mandrell*, the Seventh Circuit stated, "The judge appears to have accepted the fact that Mandrell suffered from PTSD as a result of the rape, but he then dismissed most of the symptoms that accompanied that condition." *Id*. at 518. The *Mandrell* claimant and Lisa do not share the same record – again, by Lisa's own admission, her mental health treatment record is a "small" one, and she does not cite to evidence in her record like that of the *Mandrell* claimant's.[4] It was that lacking evidentiary support which caused the ALJ in this case to find as he did with regard to Lisa's mental health impairments. That was not playing doctor, that was properly applying the regulations to the available evidence.

---

[4] For example, the *Mandrell* claimant at different times and in different combinations took seven different medications and self-medicated with alcohol and marijuana. 25 F.4th at 518. Lisa took no more than two medications for her mental health impairments and reported she did not use drugs and, at most, occasionally drank alcohol. AR 2148.

17

**3**

Lisa additionally argues that if the State Agency consultants' opinions had been adopted in full, their limitation to one- to two-step tasks would be comparable to General Educational Development Reasoning Level 1, and thus a VE may say such a limitation precludes competitive work in the contemporary national economy. The Commissioner counters that the ALJ's RFC assessment, which did not include such a limitation, was harmless given that one of the jobs that existed in significant numbers was at Reasoning Level 1. Lisa, in reply, argues that one job reasonably could have changed in character over time to become increasingly physical and/or customer-facing and that the contemporary description of housekeeper is incompatible with a limitation to one- to two-step tasks and avoidance of contact with the public. At the hearing, the VE identified the job of cleaner, housekeeping, DOT 323.687-014, as a light unskilled (SVP 2) job that a hypothetical person with Lisa's RFC could perform. AR 50. The VE testified to 200,000 of those jobs in the national economy. *Id*.

First, and most importantly, the Court has now determined that the ALJ made no reversible error in his consideration of Dr. Samardzija's, Dr. Williamson's, and Mehr's opinions and his conclusions are supported by substantial evidence. As a result, the ALJ's RFC assessment properly included only those limitations supported by the medical and other evidence of record. *Reynolds*, 25 F.4th at 473. The ALJ's sincere consideration of the evidence is reflected where: Lisa reported social anxiety, but she also said she had no problems getting along with others, so the ALJ included in the RFC a limitation to jobs that do not require more than occasional work related interaction with the public, coworkers, and supervisors; and Lisa reported trouble remembering newly assigned tasks after she finished what she was doing and she could not perform more complicated calculations upon examination, but she also said she could pay

attention and her hobbies included reading and crocheting, so the ALJ included in the RFC a limitation to jobs that only required up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multistep, self-evident tasks easily resumed after momentary distraction. Also, as the Commissioner points out, the ALJ's RFC finding was consistent with the State Agency consultants' opinions overall where they stated Lisa should be restricted to "reduced contact with the public and situations where there is a large group of people secondary to social anxiety." AR 93, AR 105. In other words, it is *not* the case that the ALJ included no additional limitations whatsoever to reflect Lisa's non-severe mental impairments. *See also* AR 52 (VE confirming at the hearing that the mental limitations in the hypothetical would limit an individual to unskilled work only).

Second, the Court is wary of accepting Lisa's argument which relies upon evidence that was not before the ALJ. *See* Plf's Reply Brief (Doc. 17 at pg. 8) (citing an article by two labor economists). Lisa says it is not mere speculation that the cleaner job now exceeds the abilities set forth in her RFC finding, but she uses phrases such as "could have changed in character" and "may be needed." *Id*. The fact remains that the VE testified her testimony was consistent with the Dictionary of Occupational Titles (DOT). AR 52-53. The DOT provides that the cleaner job, DOT 323.687-014, has a Reasoning Level of 1: "Apply commonsense understanding to carry out simple one- or two-step instructions." 1991 WL 672783. On the current record, the Court agrees with the Commissioner that even assuming it was error for the ALJ to fail to include a one- to two-step tasks limitation in the RFC finding, the error was harmless.

IV

For the reasons set forth above, it is recommended that: 1) the Commissioner's decision denying the Plaintiff's application for supplemental

19

security income be affirmed; 2) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Lisa M.F., is AFFIRMED."; and 3) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on August 30, 2023.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE